[Civ. No. 767.   Second Appellate District.—December 15, 1910.]

KIEFHABER LUMBER COMPANY, a Corporation, Respondent, v. NEWPORT LUMBER COMPANY, a Corporation, and CONSOLIDATED LUMBER COMPANY, a Corporation, Appellants.

CORPORATIONS—ACTION FOR DEBT OF ONE CORPORATION—PARTIES—JOINDER OF CORPORATION OWNING ALL STOCK—JUDGMENT.—In an action to recover a debt of one corporation, another corporation, owning the whole of its capital stock when the debt was contracted within the statute of limitations, was properly joined as a defendant to render against it as a stockholder the judgment recovered in the action.

ID.—NATURE OF LIABILITY OF STOCKHOLDER—BASIS.—The liability of a stockholder is founded upon the contract made by the corporation for and on behalf of its stockholders, their personal liability attaching to and attending that of the corporation.

ID.—STOCKHOLDERS PARTIES TO ACTION AGAINST CORPORATION—APPROPRIATE JUDGMENTS.—If a debt be established as that of a corporation, in an action to enforce the same against it, those who were stockholders when the debt was contracted may be made parties defendant thereto, and appropriate judgments entered therein.

ID.—CAUSES OF ACTION AGAINST DEBTOR CORPORATION—ASSIGNED CLAIM—BREACH OF WARRANTY UPON SALE TO PLAINTIFF—FICTITIOUS ENTRIES IN BOOK—JUDGMENT.—Where a first cause of action against the debtor corporation was upon an assigned claim against it, and other causes of action were based upon its breach of an express warranty upon a sale of its property and assets, including a book of accounts warranted to be due, in which false entries were made in the sum of $1,047.75, owing to discounts to be made to its sellers on settlement, · judgment was properly entered upon the assigned claim, and each cause of action, with interest, against the debtor corporation, and the corporation owning its stock when the causes of action arose.

ID.—EFFECT OF BREACH OF WARRANTY TO PLAINTIFF—KNOWLEDGE OF TRUE CONDITION OF ACCOUNTS NOT IMPUTABLE—KNOWLEDGE OF PROMOTER—ADVERSE INTEREST—FORGETFULNESS.—Where the warranty was not implied, but solely expressed, the previous knowledge of its promoter, who was also at the time of promotion adversely interested in the selling corporation, is not imputable to it, and where it was not present to his mind when the corporation plaintiff was organized, and he joined with it as its director when the sale to plaintiff was consummated and the warranty was made upon the purchase of its accounts and assets.

ID.—STATEMENT OF OWNERSHIP OF PROPERTY SOLD—AVERMENT OF OWNERSHIP.—The statement in the bill of sale that the property sold was that owned by the seller is not only descriptive of the property, but is in addition an averment of actual ownership.

ID.—EFFECT OF DISCOUNT AGREEMENTS AND GUARANTY.—The discount agreements had the effect to establish the claim on the part of those entitled thereto against the property sold to an amount equal to that found by court as fictitious entries, and by the express terms of the guaranty plaintiff was protected from the result of such claims when so established.

ID.—DELAY IN ESTABLISHING PAYMENT OF DISCOUNTS IMMATERIAL.—It matters not that the establishment of such claims was by the discount agreements deferred until the time of actual payment of the accounts by the debtors.

APPEAL from a judgment of the Superior Court of San Bernardino County, and from an order denying a new trial. Benjamin F. Bledsoe, Judge.

The facts are stated in the opinion of the court.

W. W. Middlecoff, Percy R. Wilson, H. M. Willis, and Horace S. Wilson, for Appellants.

Eugene C. Campbell, for Respondent.

ALLEN, P. J.—The first cause of action is based upon an assigned claim due plaintiff from the Newport Lumber Company (a corporation), the debt being contracted within three years before the commencement of the action and at a time when its codefendant, the Consolidated Lumber Company, was the owner of all of the capital stock of the Newport Lumber Company. The other causes of action were based upon the terms of an express warranty growing out of a sale to plaintiff of the assets of the Newport Lumber Company situated at Redlands.

The record discloses that one Kiefhaber was the managing agent at Redlands of the Newport Lumber Company (hereinafter referred to as the Newport Company), which corporation was a subsidiary of its codefendant, the latter owning all of the capital stock of the former; that Kiefhaber, having in contemplation the organization of an independent corporation which should acquire the Newport Company's business

at Redlands, entered into preliminary negotiations relative to such purchase. This resulted in the execution of an instrument signed by the vice-president of the Newport Company, by the terms of which the Newport Company proposed to sell its property and lumber yards at Redlands, owned by it, including a large amount of uncollected accounts, for the aggregate price of $38,800; the receipt of $350 from Kiefhaber was acknowledged, and the balance was to be paid in cash and notes of the Kiefhaber Lumber Company; a bill of sale to be made when the cash payments were made. It was also stated in such proposition that possession of the assets so sold had been delivered. Kiefhaber accepted these terms, and accordingly executed his note for $350, and proceeded, in connection with other parties, to organize plaintiff corporation, upon which organization plaintiff caused to be paid the cash amount stipulated in such written proposal, including the amount covered by Kiefhaber's note of $350, and a bill of sale was duly executed by the Newport Company to plaintiff. In this bill of sale the Newport Company stipulated that it was selling the property owned by it at Redlands and covenanted and agreed to warrant and defend the sale of said property, goods and chattels against all persons claiming or to claim the same. Among the items entering into the gross purchase price was one of accounts due the Newport Company, amounting to $16,750.20. This sum was shown by the books and a balance sheet present before the parties at the time of the contract to be due the Newport Company from various customers on account of goods theretofore sold and delivered. These books of account so shown were in fact inaccurate in this, that while the goods had in fact been sold and charged upon the books, the same had been sold under an agreement that upon payment thereof a deduction by way of discount should be made by the seller. This discount agreement was previously known by Kiefhaber, but was overlooked, and he did not have in mind the same when the sale was proposed or made.

The court finds that the amount of the accounts so reported to be due the seller and contracted to be sold under the bill of sale was $1,047.45 in excess of the sum actually due the Newport Company from its customers, and to that extent the books were inaccurate and the accounts fictitious. The

court upon the trial rendered judgment for the amount of the assigned claim, plus the amount of the inaccuracies in the books, the same aggregating $1,362.45, with interest. From this judgment and an order denying a new trial, defendants appeal.

It is contended that there is a misjoinder of parties defendant. With this we do not agree. The liability of a stockholder is one founded upon contract made by the corporation for and on account of its stockholders, their personal liability attaching to and attending that of the corporation. (*Kennedy* v. *California Sav. Bank,* 97 Cal. 93, [33 Am. St. Rep. 163, 31 Pac. 846].) If a debt be established as that of a corporation, when an action to recover the same is brought, the stockholders who were such when the debt was contracted may be joined as parties defendant and appropriate judgments entered in the action.

We see no merit in the contention that the sale is shown by the record to have been made by the defendant Newport Company to Kiefhaber, and not to plaintiff. It does not appear that any authority reposed in Wheatley, the vice-president of the Newport Company, to execute the original agreement with Kiefhaber, and especially to turn over the corporate property without first receiving payment. The mere fact that he was an officer did not for that reason alone warrant him in selling the entire business of the corporation at Redlands, nor to make any contract outside of one in the usual and ordinary course of business, unless the by-laws or action of the board of directors authorized the same. In addition to this, the instrument executed by Wheatley upon its face demonstrates that the sale was in fact made to plaintiff, it being stipulated that the consideration was to be paid and secured by plaintiff, outside of the nominal cash payment purported to have been made at the time of the execution of the instrument. When the board of directors of the Newport Company came to act in the transaction, as must be assumed from the bill of sale executed under the seal of the corporation, the plaintiff was the recognized purchaser, and to which purchase Kiefhaber is shown to have assented. The instrument first executed in Kiefhaber's name was recognized by all as a tentative proposition made in the interest of and

for the benefit of plaintiff when it should complete its organization.

It is further insisted that as to the accounts sold, which were existent and valid as to some amount, the warranty did not justify an action for failure of quantity or quality in property delivered and accepted by the buyer at the time of sale when the title to the thing sold is not in any manner questioned. The sale was based upon a written guaranty of the seller "to warrant and defend the sale of said property, goods and chattels hereby made," etc., "against all and every person whomsoever lawfully claiming or to claim the same." We are not confronted with any question of implied warranty, but as to the effect which should be given the express warranty as above set forth. It is not contended that the plaintiff had any knowledge of the true condition of the various accounts at the time of the sale, unless previous knowledge on the part of Kiefhaber can be said to be knowledge. Aside from the well-established rule that the knowledge of a promoter is not knowledge to the corporation thereafter formed through his efforts, the record shows that whatever knowledge Kiefhaber had in the preceding year as to the discount agreement and the erroneous character of the book entries, such knowledge was not present in his mind when, as a director of plaintiff, he joined in the purchase of the accounts. Further, Kiefhaber was a stockholder in the selling corporation, and therefore his interests were in conflict with those of the purchaser. Under all of these circumstances, we are satisfied that no notice or knowledge of the true condition of the accounts had been brought home to the plaintiff when the contract of purchase was made. The statement in the bill of sale that the property sold was that owned by the seller not only must be taken as descriptive of the property, but, in addition, as an averment of actual ownership. "Material misrepresentations concerning the quantity of. the thing sold, which were made to be acted upon and have deceived the purchaser, will justify rescission or an action; ... where the matter is not palpable to the observation, the buyer may rely upon the express and positive representations of the seller as to quantity made to influence the buyer's action." (Mechem on Sales, sec. 938.)

The discount agreements had the effect to establish the claim on the part of those entitled thereto against the property sold to an amount equal to that found by the court as fictitious entries, and by the express terms of the guaranty plaintiff was protected from the result of such claims when so established. It matters not that the establishment of such claims was by the discount agreements deferred until the time of actual payment of the accounts by the debtors.

The evidence is sufficient to warrant each and every finding of the court, and no bar of the statute of limitations is made to appear.

We find no error in the record, and the judgment and order are affirmed.

Shaw, J., and James, J., concurred.

A petition for a rehearing of this cause was denied by the district court of appeal on January 13, 1911, and the following opinion rendered thereon:

THE COURT.—The statement in the opinion heretofore filed in the above-entitled cause is inaccurate wherein it is stated that "Kiefhaber was a stockholder in the selling corporation, and therefore his interests were in conflict with those of the purchaser." The conflicting interest arose through the fact that it was admitted upon the trial that Kiefhaber "was the manager there of the Newport Lumber Company; that he had full powers, practically the general manager of the Newport Lumber Company at Redlands, and had full control of it; there is no question made as to his powers, absolutely none; he had power to do anything, and he had full control, up to the time that they sold out—up to the time that the Newport Lumber Company sold out to the Kiefhaber Lumber Company." Kiefhaber, however, was not a stockholder in the selling company. This admission should dispose of the question involved as to who purchased the business from the Newport Company.

With the correction above noted, we still adhere to our former judgment.

Rehearing denied.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on February 13, 1911.